1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

Vitale & Associates, LLC,

Plaintiff,

v.

Sue Lowden, et al.,

Defendants.

Case No.: 2:12-cv-1400-JAD-VCF

**Order Granting Summary Judgment
[Doc. 101] and Denying Motion for
Attorney Fees and Costs [Doc. 102]**

This breach-of-contract action stems from Sue Lowden's unsuccessful 2010 bid to win the Republican nomination for one of Nevada's U.S. Senate seats. Vitale & Associates, LLC, a Colorado political consulting firm, claims that Lowden's campaign committee *Sue Lowden for U.S. Senate* still owes it more than $75,000 for polling services and that Lowden personally should cover the bill.[1] Lowden moves for summary judgment, arguing that discovery has closed without unearthing any evidence on which Vitale can hold her legally responsible for her campaign committee's debt and that Vitale cannot prove its entitlement to a declaratory judgment.[2] Lowden also seeks an award of attorneys fees and costs she incurred due to Vitale's haphazard summary-judgment filings.[3] I conclude that Lowden has shown there is no evidence to support Vitale's claims, so I grant summary judgment in her favor. But I deny Lowden's motion for fees and costs because Lowden has not demonstrated bad faith.

## I. Lowden's Motion for Summary Judgment [Doc. 101]

When a defendant moves for summary judgment on a plaintiff's claims "on the ground that the nonmoving party has no evidence," she "must affirmatively show the absence of evidence in the

---

[1] *See* Doc. 12 at 2–3.

[2] Doc. 101.

[3] Doc. 102.

record."[4]  "If there is literally no evidence in the record, the moving party may demonstrate this by reviewing for the court the admissions, interrogatories, and other exchanges between the parties that are in the record.  Either way, however, the moving party must affirmatively demonstrate that there is no evidence in the record to support a judgment for the nonmoving party."[5]  When the movant makes that showing, the "burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial."[6]  The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[7]

Vitale's amended complaint contains four thinly pled "claims."  Vitale first claims that Lowden is responsible for paying $77,796.88 for polling services it provided her campaign because Lowden "either directly or through an agent, entered into a contract for services with" Vitale, which she breached by not paying Vitale's invoices.  Second, Vitale claims that Lowden is liable under a promissory-estoppel theory because she "promised to personally pay all campaign debts," including this one—a promise that Vitale relied on to its detriment.  And finally, Vitale seeks two declarations: (1) Lowden failed to organize her campaign committee in compliance with Nevada's Revised Uniform Unincorporated Nonprofit Association Act, NRS 81.700 et seq., so the campaign should not be regarded as a distinct legal entity; and (2) the campaign is Lowden's alter ego.  Lowden contends that Vitale has no evidence to support any of these theories and she is entitled to summary judgment on all claims.  I address each claim in order.

### A.   Lowden is entitled to summary judgment on Vitale's breach-of-contract claim because there is no evidence that Lowden entered into a contract on her own behalf with Vitale.

Vitale claims that Lowden entered into a contract with it either directly or through her agent Robert Uithoven at J3 Strategies, LLC, Lowden's campaign-management company.  Vitale further

---

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 332 (1986) (internal citations omitted).

[5] *Id.*

[6] *Miller v. Glenn Miller Productions, Inc.*, 454 F.3d 975, 987 (9th Cir. 2006).

[7] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (footnote omitted).

1    claims it was not paid according to the contract terms.[8]  In Nevada, a plaintiff succeeds on a breach-

2    of-contract claim by showing four elements: (1) formation of a valid contract; (2) performance or

3    excuse of performance by the plaintiff; (3) material breach by the defendant; and (4) damages.[9]

4    Nevada trial courts have found that "[f]or a plaintiff to bring a breach of contract action against a

5    defendant, the plaintiff and defendant must have a contractual relationship."[10]  Vitale's claim falters

6    at the first element.

7          Lowden has satisfied her burden to show that there is no evidence of a contract between

8    herself and Vitale.  There is no evidence that Vitale has any written contract to perform services for

9    Lowden or the campaign.  In her affidavit, Lowden affirms that she never personally promised

10   anyone that she would pay the campaign debts of *Sue Lowden for U.S. Senate* and never authorized

11   anyone to personally obligate her for them.[11]  She affirms that "the unincorporated nonprofit

12   association *Sue Lowden for U.S. Senate*" was formed because she "never intended to be personally

13   liable for" the campaign's debts.[12]  A Statement of Organization for the campaign entity was filed

14   with the Federal Election Commission (FEC) on October 1, 2009, several months before Vitale

15   performed the services it claims it was not paid for.[13]  Vitale's invoices are addressed to "*Sue*

16   *Lowden for US Senate*."[14]  In deposition, plaintiff's principal Todd Vitale testified that, in his mind,

17   "the campaign" was his client.[15]

18         Requests for admissions propounded upon Vitale—and deemed admitted because Vitale

19

20         [8] Doc. 12 at 2-3; Doc. 103 at 9, Doc. 103-31.

21         [9] *Bernard v. Rockhill Dev. Co.*, 734 P.2d 1238, 1240 (Nev.1987).

22         [10] *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp. 2d 1234, 1240 (D. Nev. 2008).

23         [11] Doc. 101-1 at 2.

24         [12] *Id*. at ¶ 8.

25         [13] Doc. 101-3 at 11, 20; 101-6 at 20, ln. 23-25 (when deposed, Vitale testified that the April

26   2010 polling was the first one the company was not paid for).

27         [14] Doc. 101-3 at 11–18.

28         [15] Doc. 101-6 at 8, ln. 17–21.

failed to respond to them[16]—also establish that Lowden never personally contracted with Vitale for services.  These admissions establish that (1) if there was a contract, the parties to that contract were Vitale and the campaign, not Sue Lowden personally, and (2) no contract was formed with Lowden.[17]  The Ninth Circuit has expressly recognized that "[u]nanswered requests for admissions may be relied on as the basis for granting summary judgment."[18]  The burden shifts to Vitale to show a genuine issue of fact.

Vitale has not met that burden.  It argues that Robert Uithoven and Jennifer Harrington, representatives from J3, contracted for Vitale's services on behalf of Lowden personally.[19]  But the evidence that Vitale relies on for this proposition shows, at best, that Lowden obligated the campaign entity.  Uithoven's affidavit on which Vitale relies for this argument reflects that Lowden was making and communicating decisions "for the campaign" and that Vitale's invoices were "approved by campaign staff."[20]  Uithoven states that he "had numerous discussions with Sue Lowden regarding funding of the campaign expenses" and she "[r]epeatedly" said "whatever it took in [her family's] personal funds to win would be available."[21]  But he does not connect those discussions to Vitale's services.

---

[16] Lowden served her First Set of Requests for Admissions on Vitale's local counsel on December 13, 2013.  Doc. 38-1 at 12, 38-2 at 5–8, 38-3 at 15.  Vitale did not respond to them.  Doc. 47 at 6–8; Doc. 101 at 7.  Magistrate Judge Ferenbach denied Vitale's request for an extension of time to respond because he found that Vitale had not demonstrated excusable neglect.  Doc. 47 at 6-8; Doc. 86 at 5.

Federal Rule of Civil Procedure 36(a)(3) states that a matter is deemed admitted "unless, within 30 days after service of the request . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or by the party's attorney."  Fed. R. Civ. P. 36(a)(3).  Once admitted, the matter "is conclusively established."  Fed. R. Civ. P. 36(b).  *See also Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007).

[17] Doc. 101-6 at 9.

[18] *Conlon*, 474 F.3d at 621.

[19] Doc. 103 at 9–13.

[20] Doc. 103-31 at 1–2.

[21] *Id*. at 2.

Page 4 of 11

1    The record simply does not contain any evidence that, when construed in the light most

2   favorable to Vitale & Associates, LLC, shows that Sue Lowden personally contracted with this

3   pollster to pay for services provided to her campaign entity.  Accordingly, Lowden is entitled to

4   summary judgment on Vitale's breach-of-contract claim.

5

6       **B.    The absence of evidence of Lowden's promise to cover the campaign's debt to Vitale dictates summary judgment on Vitale's promissory-estoppel claim.**

7    Vitale's second claim for "promissory estoppel" fails for the same reason as its breach-of-

8   contract claim: no evidence of Lowden's promise to personally pay the campaign entity's debts.

9   The threshold element of a promissory estoppel claim in Nevada is a promise.[22]  As the Nevada

10  Supreme Court explained in *Vancheri v. GNLV Corp.*, "[t]he doctrine of promissory estoppel, which

11  embraces the concept of detrimental reliance, is intended as a substitute for consideration, not as a

12  substitute for an agreement between the parties.  Accordingly, the first prerequisite of the agreement

13  is a promise."[23]  With no evidence that Lowden promised Vitale she would personally cover the

14  campaign's debt to it, Vitale cannot prove its promissory estoppel claim, and summary judgment

15  must be granted on this claim, too.[24]

16      **C.    Vitale cannot maintain independent claims for declaratory relief.**

17   Vitale's final two "claims" seek declaratory judgments that (1) "the Sue Lowden for US

18  Senate was not organized and conducted in accordance with the requirements of NRS § 81.700 et

19  seq.," and (2) the entity "is the alter ego of Defendant Sue Lowden and that she is personally liable

20  for the obligations owed to" Vitale.[25]  These claims fail for several reasons.

21

22   [22] *Bell v. ReconTrust Co.*, 587 F. App'x 402, 406 (9th Cir. 2014) ("In Nevada, a plaintiff must establish that the defendant made a definitive promise to the plaintiff in order to establish a
23  primary element of promissory estoppel.").

24   [23] *Vancheri v. GNLV Corp.*, 777 P.2d 366, 369 (Nev. 1989).

25   [24] Even if the record could be interpreted to contain evidence of this promise, Vitale's promissory-estoppel claim is barred by the statute of frauds.  An oral promise to guarantee the debt
26  of another is not enforceable in Nevada.  *See Pentax Corp. v. Boyd*, 904 P.2d 1024, 1026 (Nev. 1995) ("Under . . . Nevada law, contracts of guarantee are subject to the statute of frauds."); *accord*,
27  *Tri-Pac. Commercial Brokerage, Inc. v. Boreta*, 931 P.2d 726, 728 (Nev. 1997).

28   [25] Doc. 12 at 4–5.

1

2          ***1.     A declaratory judgment is a form of relief, not an independent theory of recovery.***

3          First, a declaratory judgment is a remedy, not an independent claim.[26]  Thus, these "claims"

4     for declaratory judgments cannot stand alone.

5          ***2.     The court would exercise its discretion not to entertain these claims.***

6          Even if Vitale could state "claims" for declaratory judgment, the court has no obligation to

7     entertain them.  As the United States Supreme Court articulated in *Wilton v. Seven Falls Co.*, "[b]y

8     the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's

9     quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying

10    litigants.  Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the

11    sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before

12    trial or after all arguments have drawn to a close."[27]  With no substantive claims remaining in this

13    case, I would exercise my discretion to dismiss these remaining "declaratory judgment" claims

14    because the declarations Vitale requests are no longer tied to viable claims.

15

16         ***3.     Vitale has not identified evidence to support its requests for declaratory judgments.***

17         Even if these were independent, viable claims, summary judgment would still be appropriate

18    because the record lacks evidence to prove them.  The evidence in the record supports Lowden's

19    claim that her campaign entity is protected by Nevada's Uniform Unincorporated Nonprofit

20    Association Act (NRS 81.700).  The Act states that "[a]n unincorporated nonprofit association is a

21    legal entity distinct from its members and managers"[28] and its debts are "solely the debt[s],

22    obligation[s] or other liabilit[ies] of the association" and do "not become a debt, obligation or other

23

24        [26] *See Builders Ass'n of N. Nevada v. City of Reno*, 776 P.2d 1234, 1234 (Nev. 1989) ("The Uniform Declaratory Judgments Act does not establish a new cause of action or grant jurisdiction to

25    the court when it would not otherwise exist.  Instead, the Act merely authorizes a new form of relief, which in some cases will provide a fuller and more adequate remedy than that which existed under

26    common law.") (citations omitted).

27        [27] *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995).

28        [28] Nev. Rev. Stat. § 81.755(1).

liability of a member or manager solely because the member acts as a member or the manager acts as a manager."[29]

Lowden attests that an unincorporated nonprofit association was formed for her entity to protect her from personal liability for its debts.[30]  The statute defines an "unincorporated nonprofit association" broadly as "an unincorporated organization consisting of two or more members joined under an agreement that is oral, in a record or implied from conduct, for one or more common nonprofit purposes."[31]  Circumstantial evidence strongly suggests that more than one "member" existed.  Vitale testified that over email he liaised with Lowden's campaign team, but not Lowden directly—implying that Sue Lowden for US Senate consisted of more than one "member."[32] Lowden's FEC paperwork was signed by Robert Beers as "treasurer" of the entity.[33]  Vitale addressed research memoranda not to Lowden personally, but to "Sue Lowden for U.S. Senate"[34] and to Lowden and Uithoven jointly.[35]  In his affidavit, Vitale attests that he spoke almost daily with Uithoven and that he also interacted regularly with Harrington, chief media advisor Rex Elsass, chief fundraiser Janel Domenico, chief lawyer Charlie Spies, "the direct-mail consultants, and the web/email team."[36]

---

[29] Nev. Rev. Stat. §§ 81.755, 81.770.  Vitale relies on *Karl Rove & Co. v. Thornburgh*, 39 F.3d 1273 (5th Cir. 1994), in which the circuit held a candidate liable for his campaign committee's debts.  Doc. 103 at 20.  But *Rove* was decided before Texas adopted the Act in 1995.  *See MT Falkin Investments, L.L.C. v. Chisholm Trail Elks Lodge No. 2659*, 400 S.W.3d 658, 661 (Tex. Ct. App. 2013) (noting that "Chapter 252 [of the Texas Business Organizations Code] is the codification of the Texas Uniform Unincorporated Nonprofit Association Act ("TUUNAA"), Texas's version of the Uniform Unincorporated Nonprofit Association Act ("UUNAA"), which the legislature adopted in 1995.").  Accordingly, *Rove* is inapposite.

[30] Doc. 101-1 at 2.

[31] Nev. Rev. Stat. § 81.740.

[32] Doc. 101-6 at 21, ln. 25–22, ln. 1 1–13.

[33] Doc. 101-3 at 20–24.

[34] Doc. 103-10 at 3.

[35] Doc. 103-5 at 2.

[36] Docs. 103-1 at 2; 103-31.

Page 7 of 11

1    In his Rule 30(b)(6) deposition on behalf of the company,  Todd Vitale could identify no

2  evidence to support his company's contention that the campaign entity does not qualify as an

3  unincorporated association under the Act.[37]  In its opposition to the motion for summary judgment,

4  Vitale contends there were no "governing principles" adopted as required by NRS 81.715, and that

5  there is no evidence that Lowden appointed a registered agent "as required under" NRS 81.785.[38]

6  But even if there were no paper trail at all, Vitale does not demonstrate that one is required under the

7  statute.  NRS 81.740 broadly covers organizations formed by oral agreement, "in a record [,]or

8  implied from conduct."[39]  Vitale also overstates NRS 81.785.  It's permissive, not mandatory,

9  because it states that "[a]n unincorporated nonprofit association *may*" appoint a registered agent.[40]  In

10  sum, Lowden shifted the burden to Vitale to show that the campaign entity was not organized and

11  conducted in accordance with NRS 81.700 et seq., and Vitale did not satisfy it.  Lowden is thus

12  entitled to summary judgment on Vitale's third claim for relief.

13    The same is true for Vitale's final declaratory-judgment claim in which the pollster seeks a

14  declaration that "the Sue Lowden for US Senate is the alter ego of Defendant Sue Lowden and that

15  she is personally liable for the obligations owed" Vitale.[41]  For the alter-ego doctrine to apply: (1) the

16  entity must be influenced and governed by the person asserted to be the alter ego; (2) there must be

17  such unity of interest and ownership that one is inseparable from the other; and (3) the facts must be

18  such that adherence to the corporate fiction of a separate entity would, under the circumstances,

19  sanction fraud or promote injustice.[42]

20    Although Lowden need only refute one of these three factors, the admissible evidence

21  undermines both the first and third.  Vitale testified that he interacted with other campaign staff

22

23    [37] Doc. 101-6 at 36, ln 12–22.

24    [38] Doc. 103 at 19.

25    [39] Nev. Rev. Stat. § 81.740.

26    [40] Nev. Rev. Stat. § 81.785(1) (emphasis added).

27    [41] Doc. 12 at ¶ 30.

28    [42] *McCleary Cattle Co. v. Sewell*, 317 P.2d 957, 959 (Nev. 1957).

1   members, not merely Lowden, suggesting a dilution of actual control.  Indeed, he attests that the

2   work he performed was "all as authorized, directed and requested by Robert Uithoven," the

3   campaign manager.[43]  Most importantly, the evidence does not indicate that adhering to the corporate

4   form would sanction fraud or work an injustice.  Vitale believed it was being hired by the campaign,

5   not Lowden herself: its proposals and invoices were directed to *Sue Lowden for U.S. Senate*.  Had

6   Vitale intended to obligate Lowden personally, it could have done so by entering a written contract

7   with Lowden directly or obtaining her personal guaranty.  Thus, no manifest injustice would result

8   from enforcing the legal fiction between Lowden and the campaign entity.  Lowden's motion for

9   summary judgment on Vitale's fourth claim for relief is granted.

10  **II.     Lowden's Motion for Attorney's Fees [Doc. 102]**

11          This is the second round of briefing on Lowden's motion for summary judgment.  The

12  briefing on the earlier round—as I pointed out in an August 2014 order disregarding that briefing and

13  directing the parties to start over—was in disarray because of Vitale's counsel's actions.[44]   Vitale's

14  original summary-judgment response contained a defective affidavit from Uithoven.[45]  In the

15  interests of justice, I let Vitale refile the response "substituting the new Uithoven affidavit for the

16  previous one . . . .  No other changes to the opposition are authorized."[46]  Vitale ignored this

17  limitation.  Its new response added, subtracted, and altered numerous exhibits, resulting in a flurry of

18  new filings.  So I denied Lowden's motion for summary judgment without prejudice under my

19  "inherent authority to manage the conduct of parties before" the court and ordered a streamlined do-

20  over with a single set of briefs.[47]  I further noted that, "given the significant delays and evasions

21  employed by Vitale's counsel that have prevented the court from reaching and resolving the merits

22  of the current motion, [I would] entertain a motion from Lowden for her reasonable attorney's fees

23  ————————————————

24          [43] Doc. 103-1 at ¶ 2.

25          [44] Doc. 99.

26          [45] *See* Doc. 87.

27          [46] *Id*. at 2.

28          [47] *Id*. at 6.

1   and costs arising in connection with the drafting, review, or filing of all summary judgment

2   documents filed after the court's order at Doc. 87, for any conduct that may warrant an award of

3   fees."[48]  Lowden now moves for $10,218.50 in fees and $24.00 in costs.[49]

4        Lowden has not demonstrated that an award of sanctions is justified here.  She notes that

5   "Rule 11 specifically provides that a court may impose sanctions 'upon its own initiative,'"[50] but she

6   does not explain how Rule 11 was violated in this case or authorizes an award of sanctions in this

7   instance.[51]  She relies instead on the court's inherent power to award attorney's fees for bad faith

8   conduct.[52]  The district court's inherent power to manage its docket includes the ability to impose

9   attorneys' fees and costs as sanctions when a party has "acted in bad faith, vexatiously, wantonly, or

10  for oppressive reasons."[53]  Bad faith "includes a broad range of willful improper conduct."[54]

11       As I explained in my order[55] inviting the motion for fees, Vitale's attorney Corey Zurbuch

12  has consistently shown a "cavalier attitude towards his duty to investigate the record in this case,"

13  which "fits into an unfortunate pattern by Vitale's counsel that has resulted in needless court filings,

14  delay of adjudication on the merits, and a significant waste of the court's time."[56]  This conduct is

15  reckless and inadvisable for sure, but Lowden has not shown that it was willful or was done for an

16  improper purpose such that it rises to the level of bad faith.  Indeed, even Lowden characterizes this

17

18     [48] *Id.*

19     [49] Doc. 102 at 8.

20     [50] *Id.* at 3 (quoting *In re Itel Sec. Litig.*, 791 F.2d 672, 675 (9th Cir. 1986)).

21     [51] 28 U.S.C. § 1927 gives district courts discretion to order an attorney to reimburse a party
22  for "the excess costs, expenses, and attorneys' fees reasonably incurred because" the attorney "so
    multiplies the proceedings in any case unreasonably and vexatiously."  But Lowden does not rely on
23  § 1927 or ask the court to assess fees and costs against Vitale's attorney.

24     [52] Doc. 102 at 3; Doc. 106 at 3.

25     [53] *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258-59 (1975).

26     [54] *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001).

27     [55] I incorporate that order—Doc. 99—herein by reference.

28     [56] Doc. 99 at 3–4.

1  conduct as merely "[n]ot bothering to exercise enough care to properly file" documents.[57]  The

2  United States Supreme Court has warned that, "[b]ecause of their very potency, inherent powers

3  must be exercised with restraint and discretion."[58]  Heeding that warning, I deny Lowden's request

4  for fees and costs.

**Conclusion**

6      Accordingly, with good cause appearing and no reason for delay,

7      It is HEREBY ORDERED that Lowden's Motion for Summary Judgment **[Doc. 101] is**

8  **GRANTED**.  Judgment is entered in favor of the defendant and against the plaintiff on all claims.

9      It is FURTHER ORDERED that Lowden's Motion for Attorney's Fees and Costs **[Doc. 102]**

10 **is DENIED.**

11     The Clerk of Court is instructed to close this case.

12     DATED: July 29, 2015

14     Jennifer A. Dorsey
       United States District Judge

---

[57] Doc. 102 at 3.

[58] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991);  *In re Keegan Mgmt. Co.*, 78 F.3d 431, 435 (9th Cir. 1996).